IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FREDRICK ANDREW MORRIS,

                  Plaintiff,

v.

JASON T. ZEIMER,

                  Defendant.

OPINION AND ORDER

16-cv-625-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Fredrick Andrew Morris is proceeding on a claim that defendant Jason T. Zeimer, a correctional officer at the Columbia Correctional Institution, violated plaintiff's Eighth Amendment rights by failing to prevent his attempted suicide. Now before the court are the parties' cross motions for summary judgment. Dkt. ##40, 53. Because the parties' proposed findings of fact and responses confirm that there are disputed issues of material fact that must be resolved by a jury, I am denying both motions.

From the parties' proposed findings of facts and responses, I find the following facts to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

At all times relevant to this case, plaintiff Fredrick Morris was a prisoner in the custody of the Wisconsin Department of Corrections and housed at the Columbia Correctional Institution, where defendant Jason Zeimer was employed as a correctional

1

officer.

At around 2:15 p.m. on March 8, 2016, defendant was conducting wellness rounds and stopped by plaintiff's cell. Plaintiff told defendant he felt suicidal and wanted to speak with Psychological Services Unit personnel. Defendant responded by telling plaintiff to submit a psychological services request form, which is the typical manner in which inmates seek appointments with psychological services staff. (The parties dispute whether plaintiff also showed defendant that he had a cupful of pills. Plaintiff says that he showed a cup of pills to defendant and told defendant he was going to take the pills to kill himself. Plaintiff says defendant responded by asking him where he had gotten the pills and told plaintiff he needed to "fill out a green slip" to see psychological services. Defendant denies that plaintiff showed him any pills or anything else that could be a danger to plaintiff, but he agrees that he advised plaintiff to submit a psychological services request form.)

Defendant notified his unit sergeant that plaintiff had said he was suicidal. (The parties dispute whether defendant performed a "wellness check" on plaintiff shortly after plaintiff told defendant he was suicidal. Defendant states that he checked on plaintiff shortly after plaintiff said he was suicidal, but plaintiff says defendant left the tier and did not return to plaintiff's cell until the evening medication pass.)

At approximately 3:30 p.m., defendant returned to plaintiff's cell to distribute medication. Defendant showed plaintiff the medications he was distributing and asked whether they were the correct medications. After plaintiff confirmed the medications were his, defendant placed the pills in a small paper cup and gave plaintiff his medications.

2

Plaintiff then poured those pills into another small medication cup he produced that he had filled with an assortment of medications. Plaintiff then showed defendant the cup of pills and quickly ingested them in front of defendant.

Defendant immediately notified Captain Miller, who was on the tier, that plaintiff had swallowed an unknown amount of medications. Defendant did not have the ability to open plaintiff's cell himself, but after the captain directed that plaintiff's cell be opened, defendant and others then removed plaintiff from his cell and escorted him to a nurse for medical evaluation. The nurse's notes state that plaintiff reported that he had brought the medications to his cell when he was transferred between housing units and that some of the pills were Metformin, a medication used to treat diabetes. The nurse also noted that plaintiff's blood pressure was 185/88, his pulse was 155 and he showed signs of tachycardia, meaning that his heart rate exceeded a normal resting rate. Plaintiff reported that he felt tired and had a headache, but was not nauseous or vomiting and his skin was warm and dry, his speech was clear and he was able to answer questions appropriately. The nurse decided plaintiff should be transported to the Divine Savior Hospital for further evaluation and treatment.

At the hospital, plaintiff told the medical staff that he had been "feeling down," so he took approximately 25 pills, including Lisinopril, Amlodipine, Metformin, Benztropine, Trazodone and Venlafaxine, but he was unsure of how many of each he took. Plaintiff was given charcoal, which is given as a precaution to anyone who may have taken a toxic substance or overdose and helps prevent the poison from being absorbed from the stomach

into the body. Hospital records show that plaintiff's heart rate was tachycardic, but his blood pressure was stable and all other vital signs were unremarkable. He appeared in no acute distress and was alert, awake and did not display signs of respiratory distress. The hospital performed lab work and held plaintiff overnight for monitoring. He returned to the prison the next day.

OPINION

The Eighth Amendment imposes a duty on prison officials not only to provide "humane conditions of confinement," but to insure that "reasonable measures" are taken to guarantee inmate safety and prevent harm. Farmer v. Brennan, 511 U.S. 825, 834-35 (1994). An inmate may prevail on a claim under the Eighth Amendment by showing that the defendant acted with "deliberate indifference" to a "substantial risk of serious harm" to his health or safety. Id. at 836. Attempted suicide is a serious harm under the Eighth Amendment. Minix v. Canarecci, 597 F.3d 824, 831 (7th Cir. 2010). "Deliberate indifference to a risk of suicide is present when an official is subjectively 'aware of the significant likelihood that an inmate may imminently seek to take his own life' yet 'fail[s] to take reasonable steps to prevent the inmate from performing the act.'" Pittman ex rel. Hamilton v. County of Madison, Illinois, 746 F.3d 766, 775-76 (7th Cir. 2014) (alteration in original) (quoting Collins v. Seeman, 462 F.3d 757, 761 (7th Cir. 2006)). See also Rice ex rel. Rice v. Correctional Medical Services, 675 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know a prisoner suffers from

4

self-destructive tendencies.").

Plaintiff contends that defendant acted with deliberate indifference to plaintiff's threats of suicide and self-harm on March 8, 2016, when defendant failed to respond adequately to plaintiff's statement that he was feeling suicidal and intended to take a cupful of assorted pills. Defendant makes two arguments as to why plaintiff's cannot prove his claim.

First, defendant argues that plaintiff cannot satisfy the objective element of his Eighth Amendment claim because he cannot prove that he actually faced a substantial risk of serious harm to his health or safety from the assortment of pills he ingested. In particular, defendant argues that plaintiff's medical records from Divine Savior Hospital and the prison show that plaintiff had no serious signs, symptoms or medical complaints from ingesting the pills. To support his argument, defendant relies on the declaration of Dr. Ryan Holzmacher, the acting medical director for the Wisconsin Department of Corrections, who discusses plaintiff's medical records and gives the opinion that, "to a reasonable degree of medical certainty, based on my review of [plaintiff's] medical records that [plaintiff's] ingestion of apparent pills on March 8, 2016, did not cause him any serious medical problems." Holzmacher Decl., dkt. #58, ¶ 20. Plaintiff disputes Holzmacher's opinions by stating that he suffered both psychological and physical harm from ingesting the pills.

Defendant's argument fails at the outset because Holzmacher's opinion is inadmissable. Defendant never disclosed Holzmacher as an expert in this case. Under the Pretrial Conference Order, defendant was required to disclose any expert by March 16,

5

2018. Dkt. #21 at 5-6. Further, that order states that the court will not allow any undisclosed expert to give expert opinions. Id. Defendant did not disclose Holzmacher or anyone as an expert in this case even though Holzmacher's opinions are clearly expert testimony. Holzmacher purports to analyze plaintiff's lab work and give opinions based on his medical training as to likely causes of plaintiff's symptoms. In fact, defendant seems to acknowledge that Holzmacher is providing expert opinion, as defendant repeatedly objects to plaintiff's attempts to dispute Holzmacher's opinions on the ground that plaintiff lacks the expertise to object. Dft.'s Reply to DPFOF, dkt. #72, ¶¶ 56, 69, 80.

Without Holzmacher's opinions, the record shows that plaintiff ingested an assortment of pills, after which he had a headache, fatigue, low potassium and a rapid heartrate. Plaintiff was transported to the hospital and given charcoal, which likely counteracted some of the harm plaintiff could have suffered. Plaintiff also reports that he was given several snacks at the hospital to counteract problems he was having with his blood sugar and that he has suffered ongoing psychological harm as a result of the incident. On the basis of this evidence, a reasonable jury could conclude that plaintiff faced a substantial risk of serious harm from the pills he ingested.

Defendant's second argument is that even if plaintiff can satisfy the objective element of his claim, he cannot prove that defendant was deliberately indifferent. In particular, defendant says that he was not deliberately indifferent because he reported plaintiff's suicidal thoughts to a sergeant and told plaintiff to submit a psychological services request to talk to a psychologist. Additionally, defendant responded promptly after he saw plaintiff ingest the

pills.

However, plaintiff says that he showed defendant a cup of assorted pills and told him that he was going to commit suicide by swallowing them. Plaintiff alleges that defendant told plaintiff to submit a green slip and did not return until more than an hour later, at which time defendant gave plaintiff even more pills. If a jury were to believe plaintiff, it may reasonably conclude that defendant recognized, but disregarded, a credible suicide threat. Even if a jury believed defendant that he reported to his sergeant that plaintiff had expressed suicidal thoughts, it is undisputed that defendant did not tell his sergeant that plaintiff had shown him a cup of pills and expressed a plan to ingest those pills. A reasonable jury could conclude that defendant's failure to confiscate plaintiff's pills or, at the very least, report what he had heard from plaintiff to his sergeant, amount to deliberate indifference to a substantial risk of serious harm to plaintiff. Because the parties' factual disputes cannot be resolved at summary judgment, I must deny both parties' motions. United States v. Luce, 873 F.3d 999, 1005 (7th Cir. 2017) (summary judgment appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law") (citations omitted); Fed. R. Civ. P. 56(a).

Finally, defendant is not entitled to qualified immunity. It is well established that a correctional officer cannot ignore an inmate's suicide risk and that he must take steps to insure the inmate's safety. See, e.g., Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). Defendant may have notified his supervisor of plaintiff's suicidal thoughts, but the record indicates that he did not report that it was an emergency or that plaintiff had the

7

means to harm himself. If plaintiff's version of the facts is proven, defendant's action was unlawful under clearly established law.

ORDER

IT IS ORDERED that

1. Plaintiff Frederick Andrew Morris's motion for summary judgment, dkt. #40, is DENIED.

2. Defendant Jason T. Zeimer's motion for summary judgment, dkt. #53, is DENIED.

Entered this 1st day of June, 2018.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge